# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ABDUL CRAWFORD,

        Plaintiff,

Case No. 6:23-cv-01780-RBD-DCI

v.

NORTH AMERICAN CREDIT
SERVICES, INC.,

        Defendant.

_____ /

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Abdul Crawford ("Plaintiff"), respectfully requests that this Court enter summary judgment in his favor and rule, as a matter of law, that (1) Defendant, North American Credit Services, Inc. ("Defendant"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 et seq., by, among other things, sending debt collection letters to Plaintiff while he was subject to the statutory protections explicitly afforded to him under section 440, Florida Statutes, et seq., which protects individuals like Plaintiff from being dunned for medical bills arising from their work related injuries covered under workers' compensation, and (2) that there are no genuine issues of material fact relative to any defense—affirmative or otherwise—to the aforesaid violations of the FDCPA.

## I. INTRODUCTION

This case arises out of Defendant North American Credit Services, Inc.'s, violations of the Fair Debt Collection Practices Act by attempting to collect an alleged debt from Plaintiff Abdul Crawford that he did not owe.

The Fair Debt Collection Practice Act, or FDCPA, is a federal statute whose purpose is to "eliminate abusive debt collection practices by debt collectors." *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1208 (M.D. Fla. 2012) (citation omitted). One such abusive debt collection practice occurs when a debt collector falsely represents (to the consumer) the character, amount, or legal status of any debt. This includes sending a collection letter to someone who does not owe a debt. *Christopher v. RJM Acquisitions, LLC*, 2015 WL 437541, at *4 (D. Ariz. Feb. 3, 2015). Between the months of November 2022 and July 2023, Defendant knowingly sent, via U.S. Mail, debt collection letters to Plaintiff demanding payment of a debt he, by law, did not owe, *infra*.

## II. BACKGROUND

In the month of June 2022, Plaintiff was employed as a courier with AdventHealth, a Florida non-profit corporation. His job included, among other things, the transportation of laboratory samples from one place to another, using an AdventHealth-owned automobile. On June 21, 2022, Plaintiff, while acting in the course and scope of his employment with AdventHealth, was

struck from behind by another vehicle, injuring him and rendering him unconscious, resulting in his being transported by ambulance to the AdventHealth Deland Hospital where he was admitted for a period of approximately seven (7) days. Plaintiff has no present recollection of the accident or being transported to the hospital.

At some point during his stay at AdventHealth Deland Hospital, Plaintiff advised the physicians and staff involved in his treatment that his injuries were the result of a workplace accident. This fact is evident from the notations by Diane Novak, upon information and belief AdventHealth's workers' compensation case manager. **Exhibit <u>A</u>**. While undergoing treatment at AdventHealth, Plaintiff incurred a bevy of medical charges from various healthcare providers, including AdventHealth. Those charges, or at least some of them, are the subject of this action.

*It is important to note at this juncture that because Plaintiff's accident and injuries occurred within the course of and scope of his employment with AdventHealth, treatment for his injuries—as well as payment therefor— became subject to the Florida Workers' Compensation Law, Fla. Stat. § 440 et seq.*

However, irrespective of the Florida Workers' Compensation Law, Defendant, acting on behalf of AdventHealth, sent Plaintiff a letter on November 8, 2022, stating, "Your account is past due and has been placed with our office, a collection agency." **Exhibit <u>B</u>**. This letter identified the creditor as

AdventHealth Medical Group and sought payment in the amount of $117.55 for treatment rendered on June 27, 2022 (while Plaintiff was in the hospital receiving treatment for his workplace injury).

Next, on December 20, 2022, Plaintiff received a second letter from Defendant, also stating, "Your account is past due and has been placed with our office, a collection agency." **Exhibit <u>C</u>**. This letter also identified the creditor as AdventHealth Medical Group and sought payment in the amount of $675.84, again for treatment rendered on June 27, 2022 (while Plaintiff was in the hospital receiving treatment for his workplace injury). Both of these alleged debts were directly attributable to injuries attributable to Plaintiff's workplace injuries.

These collection demands rendered Plaintiff unsure and apprehensive about the protections afforded to him by Florida law. Plaintiff experienced what he called a "high level" of frustration from the collection letters which added to Plaintiff's difficulty in maintaining a safe blood pressure:

```
17    So it was
18    really frustrating that the whole time -- and then
19    actually having someone that's supposed to be taking
20    care of the bills and the bills are still coming to me,
21    that created a -- a -- a great level of -- a high level
22    of frustration.
```

**Exhibit <u>D</u>**. Crawford Dep. 97:17-25

```
2    Especially with the
3    hypertension. They told me basically to abstain
```

4

4    completely from stress, any high stress situations
5    or anything that would actually, you know, elevate
6    my pressure.
7    BY MR. HERMAN:
8    Q. And receiving these bills from AdventHealth,
9    was that something that was stressful?
10    A. Completely. Completely stressful.

**Exhibit D**. Crawford Dep. 99:2-10

Because Defendant's letters were a patently unlawful and injurious attempt to circumvent Florida law by attempting to collect a debt from an injured employee who was in no way liable for the alleged debt, this action ensued.

### A.    The Florida Workers' Compensation Law

The Florida Workers' Compensation Law, Fla. Stat. §§ 440.01-440.60, was enacted to provide that in exchange for certain medical benefits and protections from the loss of income, workers relinquished their rights to sue employers in tort, while employers paid regular premium payments in lieu of risking devastating effects of tort awards.

Under section 440.13(2)(a) of the Florida Statutes, an injured employee is entitled to "such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require." *Ascension Benefits & Ins. Sols. of Fla. v. Robinson*, 232 So. 3d 1178, 1180 (Fla. 1st DCA 2017). Additionally, pursuant section 440.13(3)(g), "The employee is ***not liable*** for payment for medical treatment or services

provided pursuant to this section except as otherwise provided in this section". (emphasis added). Moreover, section 440.13(13)(a) states, "A health care provider **_may not collect_** or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter." (emphasis added).

The Florida Chief Financial Officer's public website even provides a Frequently Answered Questions page that explains how Florida's Workers' Compensation Law shields an individual from medical bills.[1]

> **"Do I have to pay any of my medical bills?**
>
> **No, all authorized medical bills should be submitted by the medical provider to your employer's insurance company for payment.**
>
> **Reference: Section 440.13(13), Florida Statutes."**

In addition to the limitation on medical charges, the workers' compensation law makes the employer and insurance carrier legally responsible for paying medical bills, while the employer is insulated from liability. *Sun Bank/S. Florida, N.A. v. Baker*, 632 So. 2d 669, 671 (Fla. 4th DCA 1994) (citing *Long Grove Builders, Inc. v. Haun*, 508 So. 2d 476, 477 (Fla. 1st DCA 1987)); Fla. Stat. §§ 440.10(1)(a) and 440.13(3). Accordingly, debt collectors are prohibited

---

[1] Source: https://myfloridacfo.com/division/wc/employee/injured-worker-faqs (Last viewed: June 1, 2024).

from collecting medical debts incurred as a result of injuries sustained in the workplace, or during the course and scope of employment.

## B.    The Fair Debt Collection Practices Act

Enacted in 1977 as an amendment to the Consumer Credit Protection Act, the Fair Debt Collection Practices Act was designed to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). It also encourages consistent legal action to protect consumers from abuses in debt collection. The statute provides for civil liability for a wide range of abusive actions, including, but not limited to, the false representation of the character, amount, or legal status of any debt. 15 U.S.C. §1692(e)(2)(A). The FDCPA is a strict liability statute and, therefore, does not require a showing of intentional conduct on part of the debt collector. *Rivera v. Amalgamated Debt Collection Services*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006). A single violation of the statute is sufficient to establish civil liability. *Id*.

A debt collector who fails to comply with any provision of the FDCPA is liable for: (1) any actual damages sustained as a result of that failure, punitive damages as allowed by the court; (2) individual statutory damages up to $1,000; and (3) costs and a reasonable attorney's fee in any such action. 15 U.S.C. § 1692k(a).

The FDCPA is a strict liability statute. *Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1337 (M.D. Fla. 2011). That said, it contains a

bona fide error defense that can shelter a debt collector from liability arising out of actions which would otherwise violate the statute. 15 U.S.C. § 1692k(c). A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation...: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) (citing *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006)). "<u>The failure to meet any one of those three requirements is fatal to the defense</u>." *Id* (emphasis added).

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Which facts are material depends on the

substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A moving party discharges its burden of proof by showing there is an absence of evidence to support the non-moving party's case. *Dietz v. SmithKline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir.2010). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or. by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1321 (11th Cir.2006). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value.").

## IV.  ARGUMENT

To state a claim under the FDCPA, the plaintiff must allege facts plausibly suggesting "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Gesten v. Phelan Hallinan, PLC*, 57 F. Supp. 3d 1381, 1385 (S.D. Fla. 2014) (Cohn, J.) (citation omitted). *Gause v. Medical Business Consultants, Inc.*, 424 F. Supp. 3d 1175, 1205 (M.D. Fla. 2019).

9

As for Plaintiff's specific FDCPA claims, section 1692e generally provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Here, Plaintiff seeks relief under subsection 1692e(2)(A), which specifically prohibits "[t]he false representation of ... the character, amount, or legal status of any debt," *id.* § 1692e(2)(A).

### A. Plaintiff has been the object of collection activity arising from consumer debt.

First, Defendant's letter of November 8, 2022 (**Exhibit B**) clearly informs Plaintiff that he is the object of collection activity. The letter explicitly states, "Your account is past due and has been placed with our office, a collection agency." (Id.). It further provides instructions as to how Plaintiff can make a payment. (Id.) On December 20, 2022, Plaintiff received a second letter from Defendant (**Exhibit C**), materially the same as the first one; both unlawfully seeking collection of an alleged debt Plaintiff did not owe, and both stemming from Plaintiff's workplace injury.

The term, "collection activity," although not explicitly defined by the FDCPA, has been held to include, among other things, assigning the account to debt collectors—as here—for the purposes of attempting to contact the consumer. *Cf. Burdick v. Palisades Collection, LLC*, 2008 WL 80943 at *1 (C.D. Cal. Jan. 3, 2008); *see also Crawford v. Senex Law, P.C.*, 259 F.Supp.3d 464,

471 (W.D. Va. 2017) (collection activity includes sending initial communication letters); *Scott v. Jones*, 1991 WL 156060 at *3 (W.D. Va. Mar. 1, 1991) ("Traditional debt collection activities include, for example, locating the debtor when necessary, communicating with him or her about the amount owed and negotiating repayment arrangements...."). Plaintiff, therefore, by virtue of receipt of Defendant's collection letters of November and December, was the object of collection activity.

It is undisputed that the alleged debt at issue arises from medical treatment provided to Plaintiff by Defendant's client. ECF No. 33, p. 13 ("It is undisputed that the medical services were rendered by the employer/creditor while its employee/patient was performing his duties for the employer"). Medical debt falls within the broad definition of "debt" under the FDCPA. See *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 607 (11th Cir.2014) (per curiam); *Dunham v. Lombardo*, 830 F. Supp. 2d 1305, 1307 (S.D. Fla. 2011) (finding that so long as a complaint "demonstrate[s] the debt involves a mortgage, credit card, medical bill, or other consumer debt," a consumer debt is established); *Randolph v. Northeast Legal*, No. 2:12-cv-03800-HGD, 2014 WL 2819122, at *3-4 (N.D. Ala. May 23, 2014) (finding "that the debt at issue is a consumer debt as defined by the FDCPA" because it "arises out of a medical debt incurred by the plaintiff") (emphasis added).

Because medical debt constitutes "debt" within the meaning of 15 U.S.C. § 1692a(5), and because Defendant's letters of November 8, 2022 and December 20, 2022, are communications made in connection with the collection of a debt, Plaintiff was *the object of collection activity arising from consumer debt.*

**B.     Defendant is a debt collector as defined by the FDCPA.**

The FDCPA, at 15 U.S.C. § 1692a(6), defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In its collection letters to Plaintiff, Defendant states "Your account is past due and has been placed with our office, a collection agency," and that "[t]his is an attempt to collect a debt…." **Exhibits B, C**. Defendant is registered as a consumer debt collector in the State of Florida, No. CCA0900472. **Exhibit E**. Notably, Defendant *does not possess* a commercial debt collection license, obviously because Defendant believes it only engages in the collection of "consumer debt."

Defendant also admits interstate communications to "seek payment of past due debt obligations claimed due by the original creditors." ECF No. 14, ⁋⁋ 18-20. Defendant has further admitted that it was "contractually retained by the original creditor to seek payment for a past due medical debt obligation."

ECF No. 14, ⁋ 17. By its own admission, Defendant satisfies the required elements of a debt collector as defined by 15 U.S.C. § 1692a(6).

## C. Defendant has engaged in an act or omission prohibited by the FDCPA.

Section 1692e broadly prohibits the use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. This section further prohibits "[t]he false representation of ... the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). "A false representation in connection with the collection of a debt is sufficient to violate the FDCPA facially, even where no misleading or deception is claimed." *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012). Whether a representation is false is judged under the "least sophisticated consumer" standard. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 n.11 (11th Cir. 1985). This standard does not depend on the plaintiff's individual perception or the perception of a reasonable consumer; rather, it depends on whether the least sophisticated consumer would know that the particular statement was false. *Landeros v. Pinnacle Recovery, Inc.*, 692 F. App'x 608, 613 (11th Cir. 2017) (citing Jeter, 760 F.2d at 1172-11723).

The collection letters mailed to Plaintiff were explicitly addressed to him and states that his accounts with AdventHealth had been listed with Defendant for collection. The letter further informs Plaintiff that Defendant is

attempting to collect a debt, and instructs him to detach the upper portion of the letter and return it with her payment. **Exhibits <u>B</u>**, **<u>C</u>**. Because the Florida workers' compensation law specifically shields Plaintiff from liability for medical incurred while injured while performing in the course and scope of employment, *supra*, Plaintiff is not obligated to remit any sum—much less the demanded $793.39 dollars (cumulatively)—to Defendant. The violative collection letters falsely implied otherwise and led him to believe that his employer had refused to pay for certain of his medical expenses.

The least sophisticated consumer, discussed *supra*, hasn't the ability to understand the intricacies of Florida's workers' compensation laws, let alone the FDCPA, and therefore, would not know to what extent he was shielded by those laws, or whether he was actually obligated to remit payment. Similarly, the least sophisticated consumer would not know that the inferences made in the collection letters, i.e., that Plaintiff owed money to AdventHealth, were patently false. Therefore, Defendant's collection letter is a "false representation in connection with the collection of a debt." *Malone v. Accounts Receivable Resources, Inc.*, 408 F. Supp. 3d 1335, 1343-44 (S.D. Fla. 2019) vacated on other grounds, 19-15047 (11th Cir. 2019).

### D. Defendant's Affirmative Defenses

An affirmative defense is "one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other

negating matters." *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011) (internal quotation marks and citations omitted). By its very definition, "[a]n affirmative defense is established only when a defendant *admits the essential facts* of a complaint and sets up other facts in justification or avoidance." *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (emphasis in original). *See also Pollo Campestre, S.A. DE C.V. v. Campero, Inc.*, 2019 WL 5577933 *1 (S.D. Fla. Oct. 29, 2019) ("An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter."). An affirmative defense that simply negates an element of the underlying claim should be treated as a denial. "A defense which points out a defect in the [p]laintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir.1988)

A defendant bears the burden of proof as to any affirmative defense. *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir.2006) ("If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense."). Here, Defendant has asserted eight separate affirmative defenses, only one of which—the *bona fide error* defense—is viable in the context of this FDCPA claim.

### a) Defense #7, *Bona Fide Error*

The bona fide error defense is a "narrow carve-out to the general rule of strict liability under the FDCPA. *Owen v. IC System, Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011):

> "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error ***notwithstanding the maintenance of procedures reasonably adapted to avoid any such error***."

15 U.S.C. § 1692k(c) (emphasis added).

This defense excepts a debt collector from liability if the debt collector demonstrates the following by a preponderance of the evidence: (1) the violation was not intentional; (2) the violation was bona fide error; and (3) the violation "occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Id.* (quoting *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009)).

As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two-step inquiry: first, whether the debt collector "maintained"—*i.e.*, actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were "reasonably adapted" to avoid the specific error at issue. See 15 U.S.C. § 1692k(c); *see also Jenkins v. Heintz*, 124 F.3d 824, 834, 835 (7th Cir.1997) (finding debt collector

conclusively established procedures prong where the debt collector actually employed both general procedures to comply with the FDCPA and specific procedures designed to avoid the error at issue); *Owen*, 629 F.3d at 1273-74 (internal quotations and citations omitted).

In this case, Defendant's bona fide error defense is deficient as a matter of law, as it fails to articulate any actual procedure it contends supports its defense that a bona fide error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid such an error." *Thomas v. Portfolio Recovery Associates, LLC*, 2013 WL 4517175, at *7 (S.D. Cal. Aug. 12, 2013); *see also Masters v. Harrison & Johnston, PLC*, 2018 WL 988097, at *5 (W.D. Va. Feb. 20, 2018) ("Defendants must identify their procedures and explain how they were adapted to avoid the error at issue.") (emphasis added). In fact, the only documentation Defendant has presented in support of its "policies and procedures" reasonably adapted to prevent the alleged "errors" at issue here is appears to be a single page from an instruction manual which purports to provide talking points instructing representatives on how to assist ***consumers*** with the filing of insurance claims. ECF No. 33, Exhibit 13. The document contains nothing remotely related to the issues here. Finally, at a minimum, any procedure in dealing with workers' compensation cases would include at least a cursory review of  Plaintiff's file. This is something Defendant clearly did not do, considering the fact that it sent Plaintiff's debt collection letters on

the very same day the accounts were transmitted from AdventHealth. Finally, the fact remains that any time after December 2, 2022, Plaintiff's pending worker's comp claim was easily discoverable if only Defendant had taken a moment to look.

Moreover, in the context of a bona fide error defense, a debt collector may not rely on the creditor's representations simply by obligating the creditor to send only valid debts. *See Owen*, 629 F.3d at 1277-77. Such a holding would frustrate the purpose of the FDCPA by allowing "debt collectors to make an end-run around statutory provisions that ensure accurate collection practices" by merely presuming the legitimacy of the debt. *Id.* at 1277 (11th Cir. 2011). The Eleventh Circuit has recognized the possibility that a debt collector "could be liable for sending a demand letter to [a consumer] even if the FDCPA does not explicitly require that [the debt collector] verify the debt before sending a demand." *Hepsen v. Resurgent Capital Services, LP*, 383 F. App'x 877, 882 (11th Cir. 2010). Based on the Eleventh Circuit's reasoning in these cases, the Court should reject any argument that Defendant right to rely on the presumption that the debt referred to it is valid. As explained in *Mraz*, "[t]o endorse a separate right to rely would provide debt collectors with the bona fide error defense on a watered-down showing." *Mraz*, 2019 WL 10784290, at *5. Accordingly, the Court should find that Defendant is not entitled to rely on the bona fide error defense as alleged in this case.

As it stands, Defendant has no procedure at all designed to determine whether an account is covered under the workers' compensation law ***prior*** to initiating collection activity. Any cessation activity that might occur is merely *after-the-fact*, reactionary conduct on the part of Defendant and cannot be considered as the maintenance of preventive procedures reasonably designed to prevent an error or violation of the FDCPA in the first instance. *Turner v. JVDB & Associates, Inc.*, 318 F. Supp. 2d 681, 687 n.2 (N.D. Ill. 2004); *see also Malone v. Accounts Receivable Resources, Inc.,* 408 F. Supp. 3d 1335, (S.D. Fla. 2019) (suspension of collection efforts was statutorily required and not a procedure adapted to avoid errors) (citing *Owen v. IC System, Inc.*, 629 F.3d 1263, 1275 (11th Cir. 2011); *Edwards v. BC Services, Inc.*, 2019 WL 6726232 *7 (D. Colo. Dec. 10, 2019) ("Defendant's practices of suspending its collection efforts and investigating a debt upon being notified that it may be subject to workers' compensation insurance do not constitute procedures reasonably adapted to avoid collection errors.") (internal citations and quotations omitted).

Finally, relying on creditors to send only valid debts *may* be a procedure, **but it is not one reasonably adapted to avoid the type of errors at issue here**. *Owen*, 629 F.3d at 1275. Therefore, Defendant may not avail itself of the affirmative defense of bona fide error.

### b. Defenses #1, #3, and #6

In its Answer and Affirmative Defenses, Defendant offers up seven other

affirmative defenses—in addition to the bona fide error defense. As its first affirmative defense, Defendant alleges that it "is not liable for the alleged actions or inactions of other third parties, and/or any of their employees, agents or principals." Defendant's third and sixth affirmative defenses are materially identical to its first; and all three fail for the same reason.

For starters, Defendant has failed to allege any allegations of actions or inactions of "other third parties," or "independent contractors," and Defendant has identified no persons, documents, or things whose actions or inactions resulted in, or was the proximate cause of its violation of the FDCPA. Third-party involvement or not, the FDCPA is a strict liability statute. *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006); *see also Rivera v. Amalgamated Debt Collection Services*, 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006). Strict liability is distinguished from fault-based liability in that a party may be held liable though they were not at fault for violating the law in question. *Ross v. Vakulskas Law Firm, PC*, 2012 WL 4092419 *6 (N.D. Iowa Sept. 17, 2012). Defendant cannot blame its actions on its creditor client or anyone else. *See, e.g., Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d. 856, 863 (S.D. Ohio 2005), aff'd, 238 Fed.Appx. 24 (6th Cir. 2007), *cert. denied*, 552 U.S. 1185 (2008) ("Defendant cannot escape liability under the FDCPA by blaming its clients for the contents of the affidavit."). Because an affirmative defense requires more than just a bare allegation of the elements to show plausibility, Defendant's

20

first, third, and sixth defenses fail as a matter of law. *RBC Bank (USA) v. Dental Care Alliance, LLC*, 2012 WL 13106331 *2 (M.D. Fla. Mar. 15, 2012).

### c. Defense #2

In its second affirmative defense, Defendant alleges that "Plaintiff's Complaint fails to state a cause of action against this Defendant upon which relief may be granted." This defense fails as well, because it is not an affirmative defense simply to state "Plaintiff has failed to state a cause of action upon which relief can be granted." *See Premium Leisure, LLC*, 2008 WL 3927265 at *3 (finding that defendant's assertion that plaintiff failed to state a claim was merely a denial and not an affirmative defense) (citations omitted).

### d. Defense #4

For its fourth affirmative Defendant alleges that "to the extent that any allegations exceed one (1) year from the date of filing the Complaint, such claims or allegations are barred by the statute of limitations under the Fair Debt Collection Practices Act ("FDCPA")." The original complaint in this action was filed on September 15, 2023. The letters which form the basis of the complaint are dated November 8, 2022 and December 20, 2022, less than one year prior to the filing of the complaint. Defendant's statute of limitations defense fails.

### e) Defense #5, Defendant's Claim that the Alleged Debt is not a Consumer Debt.

Defendant's fifth affirmative defense suggests that Plaintiff's alleged debts may "not be a 'consumer debt' as the FDCPA defines that term" because the debt was incurred as a result of activities performed "during the course and scope of Defendant's employment."

As an initial matter, there is no direct definition of the term "consumer debt in the FDCPA. In order to arrive at a definition for the term, one must independently evaluate the term "consumer" as defined in section 1692a(3), and then the term "debt" as defined in section 1692a(5).

Focusing primarily on the term "debt," it is undisputed that the alleged debt at issue arises from medical treatment provided to Plaintiff by Defendant's client. ECF No. 14, ⁋ 17. And, medical debt falls within the broad definition of "debt" under the FDCPA, *infra*. The arrow in the heart of Defendant's affirmative defense however, is that the characterization of a medical injury—and the resultant medical bills—***does not change*** simply because a consumer happened to be injured while he was at work.

The FDCPA regulates "debt collector[s]" that attempt to collect the kind of debts covered by the statute. The FDCPA specifically defines those debts as "any obligation or ***alleged obligation*** of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for ***personal, family, or household purposes***." §1692a(5) (emphasis added). Defendant's debt

collection letters, squarely directed at Defendant are clear in that Defendant is absolutely conveying to Plaintiff that he has an "obligation" or "alleged obligation." Further, an informative comparison in a slightly different context holds under another federal statute, the ADA, that medical treatment is a "service." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Moreover, "there is an extensive body of caselaw recognizing that ***personal services such as medical treatment*** are directed at the person[.]" *Wharam v. Washington University*, 2015 WL 6769004, at *6 (Oct. 9, 2015 D.N.J.). Accordingly, it is imminently reasonable, and logical, to conclude that medical treatment is a ***service*** rendered primarily for ***personal*** purposes; and costs incurred therefrom are debts within the meaning of 15 U.S.C. § 1692a(5).

Simply put, regardless whether Plaintiff's injury occurred while at work or cleaning the gutters at home, treatment for any injuries he may sustain while engaging in those activities are directed at him, the person, not some inanimate object or a corporate entity. Moreover, we need to ask, "Why do people work in the first place if not to bring money into the household?" Is work not an activity engaged in primarily for ***personal, family, or household purposes?*** Of course it is.

### f) Defense #8

Defendant's eighth and final affirmative defense suggests "failed to take reasonable steps to mitigate damages concerning the matters alleged in the

Complaint." What those so-called reasonable steps may have been are known only to Defendant because it has failed to remotely articulate any of them. In any event, Plaintiff can envision no scenario in which he could have prevented Defendant from sending unlawful collection letters.

## IV.  CONCLUSION

The record shows no genuine issue as to any material fact and conclusively establishes that Plaintiff is entitled to summary judgment as a matter of law. Defendant has not and cannot offer any witness testimony, documents, or binding (or even persuasive) authority in support of its claims or defenses. Accordingly, Plaintiff, Fern Kottler, respectfully requests that this Court grant summary judgment in her favor and against Defendant, Gulf Coast Collection Bureau, Inc.

Respectfully submitted,

s/ Scott D. Owens
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Phone: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Paul A. Herman, Esq.
Consumer Advocates Law Group
PLLC
4801 Linton Blvd Ste 11A-560
Delray Beach, FL 33445-6503
Phone: (561) 236-8851
Fax: (561) 431-2352
paul@consumeradvocatelaw.com

Thomas Patti, Esq.
E-mail: Tom@pz1g.legal
Victor Zabaleta, Esq.
E-mail: Victor@pz1g.legal
Patti Zabaleta Law Group
3323 Northwest 55th Street
Fort Lauderdale, Florida 33309
Phone: 561-542-8550

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

s/ Scott D. Owens
Scott D. Owens, Esq.