# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ABDUL CRAWFORD,

    Plaintiff,

v.                                                  Case No. 6:23-cv-1780-RBD-DCI

NORTH AMERICAN CREDIT
SERVICES, INC.,

    Defendant.
_____

## **ORDER**

Before the Court are the parties' cross-motions for summary judgment. (Doc. 34 ("Plaintiff's motion"); Doc. 33 ("Defendant's motion").) Plaintiff's motion is due to be granted and Defendant's motion denied.

## **BACKGROUND**

On June 21, 2022, Plaintiff was injured in a car accident while working as a medical courier for AdventHealth Medical Group ("AdventHealth"). (Doc. 34-7, ¶¶ 3–4; Doc. 37-1, p. 2:1-2:6.) Plaintiff was taken to an AdventHealth hospital, and AdventHealth provided a portion of his medical treatment.[1] (Doc. 34-7, ¶¶ 5–6.) During his hospital stay, Plaintiff informed AdventHealth staff that his injuries

---

[1] Defendant provides an AdventHealth Treatment and Consent Agreement, allegedly signed by Plaintiff upon his admission to the hospital, but Plaintiff disputes the authenticity of the signature. (*See* Doc. 33-1; Doc. 37-3, ¶ 1.) Neither party argues that this document is material to the analysis.

occurred during the course and scope of his employment. (*Id.* ¶ 7.)

On June 29, 2022, an AdventHealth employee made an appointment request to Centra Care for Plaintiff's workers' compensation claim against AdventHealth. (Doc. 34-1.)

AdventHealth sent a statement dated July 7, 2022, to Plaintiff for $117.55 for medical services provided on June 21, 2022. (Doc. 33-3.) AdventHealth sent a second statement dated September 7, 2022, to Plaintiff for the $117.55 charge and a further charge of $675.84 for medical services provided on June 21, 2022. (Doc. 33-5.)

In early November 2022, Plaintiff received a letter from Defendant, a debt collection agency, seeking to collect $117.55 for the AdventHealth medical bill for the treatment provided to Plaintiff.[2] (*Id.* ¶ 9; Docs. 33-6, 34-2, 34-5.) But this medical debt was covered by Florida Workers' Compensation Law and was not the responsibility of Plaintiff. (Doc. 34-7, ¶¶ 9, 13.)

Plaintiff cannot recall if he contacted Defendant after receiving the letter. (Doc. 33-7, p. 4:2–4:11.) But after receipt of the first letter, Plaintiff contacted AdventHealth disputing the unpaid medical bills. (Doc. 34-4, p. 3:1–3:10.)

On December 12, 2022, Plaintiff filed an initial Petition for Workers'

---

[2] Defendant's letter lists the "date of service" as June 27, 2022, in scrivener's error. This continues throughout the record.

Compensation Benefits with the Office of the Judges of Compensation Claims ("OJCC") requesting AdventHealth to pay for his medical treatment.[3] (Doc. 34-7, ¶ 10; Doc. 37-3, pp. 10–12.)

On December 20, 2022, Plaintiff filed a second Petition for Benefits making the same request of AdventHealth. (*Id.* ¶ 12.)

In late December, Plaintiff received a second debt collection letter from Defendant, dated December 20, 2022, seeking to collect $675.84 for the AdventHealth medical bill for treatment provided to Plaintiff for the same injuries from the work-related accident.[4] (Doc. 34-7, ¶ 11; Docs. 33-9, 34-3.) This medical bill was also covered by Florida Workers' Compensation Law and was not the responsibility of Plaintiff. (Doc. 34-7, ¶ 13.)

So Plaintiff sued Defendant for violating the Fair Debt Collection Practices Act ("FDCPA") for sending debt collection letters ("Letters") to Plaintiff for medical expenses covered by Florida Workers' Compensation Law that were meant to be paid by AdventHealth.[5] (Doc. 1-1; Doc. 34-7, ¶ 13.) Now, both Plaintiff

---

[3] In his declaration, Plaintiff said he filed the Petition for Workers' Compensation Benefits on December 2, 2022, in scrivener's error.

[4] Defendant's November and December letters, in apparent scrivener's error, list the date of service as June 27, 2022. Defendant and Plaintiff also give various erroneous dates for the treatment provided to Plaintiff for the work-related injuries throughout their briefings, however, all parties agree that the charges at issue were for the same treatment of the same injuries.

[5] Plaintiff only mentions the November collection letter from Defendant in the Complaint, but neither party disputes the existence of the December collection letter, and Plaintiff alleges violations of the FDCPA based on both letters in his summary judgment briefings. (*See* Docs. 1-1, 33, 34.) As such, the Court will consider Plaintiff's FDCPA allegations against Defendant as to

and Defendant move for summary judgment. (Docs. 33, 34.) With briefing complete, the matter is ripe. (*See* Docs. 36–39.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). When considering cross-motions for summary judgment, the Court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). But the Court does not have to accept the non-movant's factual characterizations and legal arguments. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994). The court must ultimately decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

Plaintiff argues that the Letters sent by Defendant constitute violations of

---

both letters.

the FDCPA because the Letters falsely represented that Plaintiff owed medical debt to AdventHealth.[6] (Doc. 34, pp. 10–14.) Defendant counters that the Letters are not consumer "debt" within the meaning of the FDCPA, and that it is entitled to the bona fide error defense. (Doc. 33.) The Court will address each issue in turn.

### I. Consumer Debt

Defendant, a debt collector, argues that the medical debt at issue is not consumer "debt" within the meaning of the FDCPA because the treatment provided was for a workplace injury, and Florida's Workers' Compensation Law covered the debt. (Doc. 33, pp. 7–14; Doc 36, pp. 4–12.) Further, Defendant claims that emergency medical debt is not consumer debt, and that the medical debt is not FDCPA "debt" at all because Plaintiff was never actually responsible for payment. (Doc. 39, pp. 2–4.)

Plaintiff argues that the debt at issue is consumer debt because the debt was part of a transaction between Plaintiff and AdventHealth for personal medical treatment. (Doc. 37, pp. 2–8.)

A debt collector violates the FDCPA when it falsely represents "the

---

[6] Plaintiff also argues against each of Defendant's Affirmative Defenses. (*See* Doc. 34, pp. 14–24.) However, Defendant only provides arguments in support of its Fifth and Seventh Affirmative Defenses in its summary judgment briefings. (*See* Docs. 33, 36, 39.) So the Court will consider Defendant's remaining Affirmative Defenses abandoned. Further, the Court notes that much of what Defendant deemed "affirmative defenses" in its Answer are not actually affirmative defenses by definition. (*Cf.* Doc. 14.)

5

character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1692a(5).

A debt collector's false representation of debt facially violates the FDCPA, even in the absence of deception or misleading behavior. *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012). Whether a letter from a debt collector violates Section 1692e is evaluated under the least sophisticated consumer standard, meaning that a violation has occurred if the least sophisticated consumer would be deceived by a debt collector's false representation of debt. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173–77 (11th Cir. 1985) (adopting standard from Second Circuit).

To bring a successful FDCPA claim, a plaintiff must show that the money at issue is a "debt." *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836–37 (11th Cir. 2010). Medical bills are "debt" within the meaning of the FDCPA. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014). Further, a plaintiff's medical debt that is subject to payment by their employer under Florida's Workers' Compensation Law qualifies as "debt" under the FDCPA. *See Kottler v. Gulf Coast Collection Bureau, Inc.*, 460 F. Supp. 3d 1282, 1286–87 (S.D. Fla. 2020),

*aff'd*, 847 F. App'x 542 (11th Cir. 2021).

Here, the debt at issue, medical debt for treatment provided to Plaintiff covered by Florida's Workers' Compensation Law, meets the definition of "debt" under the FDCPA. (*See* Doc. 34-7, ¶ 13); *Kottler*, 460 F.Supp.3d at 1286–87. As such, Defendant's arguments claiming that the medical debt at issue is not FDCPA "debt" because workers' compensation covered the debt, was the result of emergency medical treatment, and was non-transactional in nature are unconvincing. (*Cf.* Docs. 33, 36, 39.) So Defendant violated Section 1692e(2) when it sent the Letters to Plaintiff attempting to collect the medical debt.[7]

## II.   Bona Fide Error Defense

To successfully assert the bona fide error defense, the burden is on the defendant to show that, by a preponderance of evidence, its violation of the FDCPA: "(1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009)

---

[7] It is undisputed that Defendant's Letters were false representations of money that Plaintiff did not owe—both parties agree that the debt was the responsibility of AdventHealth. (*See* Docs. 33, 34.) Also, the least sophisticated consumer would not have understood that Defendant's representations in the Letters, that Plaintiff was responsible for the debt from his medical treatment, were false. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177 n.11 (11th Cir. 1985); *Kottler*, 460 F.Supp.3d at 1286–87 (finding that "the least sophisticated consumer would not understand the nuances of Florida's Workers' Compensation Law" and would not know that they were not required to pay medical debt requested in the collection letter at issue). So Defendant's sending of the Letters is a violation of § 1692e(2).

(adopting Tenth Circuit standard) (cleaned up). The defendant must satisfy all three requirements. *Id.*

There is no dispute that Defendant meets the first two prongs of the bona fide error defense. (*See* Doc. 33, pp. 14–15; Doc. 37, pp. 8–9.) The central issue is whether Defendant maintained procedures reasonably adapted to avoid the error at issue. (*See* Doc. 33, pp. 14–21; Doc. 37 at 9–13.) Defendant lists three procedures in support of its defense: (1) sending the Letters to Plaintiff as required by Section 1692g of the FDCPA;[8] (2) an internal procedure instructing its employees on what to do if accounts are found to be covered by workers' compensation; and (3) AdventHealth's Standard Operating Procedure giving instructions to AdventHealth employees on the proper handling of accounts with workers' compensation claims and FDCPA compliance measures.[9] (Doc. 33, p. 15; Doc. 33-13; Doc. 36-1.)

To satisfy the third prong of the bona fide error defense, the procedures component, the defendant must show, as part of a two-step inquiry, that it both

---

[8] § 1692g provides requirements for debt collectors on sending written notice of debt to consumers.

[9] Defendant also states that Plaintiff "declined to seek any statutory or self-help assistance" and "did nothing" in response to the Letters. (*See* Doc. 33, p. 15.) The Court notes that nothing in the FDCPA requires plaintiff consumers to dispute the debt with the debt collector before filing suit under § 1692e. *See Malone v. Accts. Receivable Res., Inc.*, 408 F. Supp. 3d 1335, 1344–45 (S.D. Fla. 2019) (agreeing with other circuits that consumer exhaustion of debt validation procedures is not a prerequisite for bringing § 1692e claims).

"maintained – i.e. actually employed and implemented – procedures to avoid errors" and that "the procedures were reasonably adapted to avoid the specific error at issue." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1273–74 (11th Cir. 2011) (adopting Tenth Circuit standard). This is dependent on the "facts and circumstances of each case," and the first step requires a "low threshold." *Id.* at 1274.

While debt collectors are not required to independently investigate and verify the accuracy of a debt to qualify for the bona fide error defense, they cannot "blindly rely on creditors to send only valid debts."[10] *See id.* at 1275–77. An "after-the-fact procedure" designed to prevent an error from happening again is also not sufficient to qualify as bona fide error. *See id.* at 1275; *see also Kottler*, 460 F.Supp.3d at 1287 (rejecting bona fide error defense where debt collector's internal procedures included training employees not to pursue debts subject to workers' compensation, stopping collection once a workers' compensation claim was potentially discovered, and conducting an internal investigation when debts were found to be covered by workers' compensation). Further, procedures that the debt

---

[10] Defendant's reliance on *Cornette v. I.C. Sys., Inc.*, 280 F. Supp. 3d 1362, 1371 (S.D. Fla. 2017) is unpersuasive. Multiple courts have declined to follow *Cornette* in light of *Owen*. *See Malone v. Accts. Receivable Res., Inc.*, 408 F. Supp. 3d 1335, 1344 (S.D. Fla. 2019); *Denning v. Mankin L. Grp., P.A.*, No. 8:21-cv-2822, 2022 WL 3365273, at *9–10 (M.D. Fla. Aug. 11, 2022), report and recommendation adopted, No. 8:21-cv-2822, 2022 WL 4139242 (M.D. Fla. Sept. 12, 2022). Here, the Court agrees that *Owen* forecloses a reliance defense. *See Owen*, 629 F.3d at 1277.

collector is otherwise statutorily required to implement are insufficient. *See Owen*, 629 F.3d at 1275. Defendants must point to some internal procedures or controls to satisfy their burden. *See id.* at 1276.

The Eleventh Circuit noted, "to qualify for the bona fide error defense, the debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid readily discoverable errors, such as the errors here." *Id.* at 1276–77. But even in cases in which courts determined the error at issue was not "readily discoverable," those courts found that, at a minimum, some internal procedure reasonably designed to avoid that type of error was necessary. *See Valdes v. Accts. Receivable Res., Inc.*, 544 F. Supp. 3d 1313, 1321 (S.D. Fla. 2021); *Carter v. Cap. Link Mgmt. LLC*, 614 F. Supp. 3d 1038, 1048–49 (N.D. Ala. 2022).

Although the third prong of the bona fide error defense "is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law," courts have consistently resolved the issue at the summary judgment stage. *See, e.g., Owen*, 629 F.3d at 1277.

Defendant maintains three claimed procedures to avoid errors: (1) the validation process required by Section 1692g of the FDCPA; (2) its internal procedure instructing employees on what to do if accounts are found to be covered by workers' compensation; and (3) its reliance on AdventHealth's procedure to

prevent the collection of debt covered by workers' compensation.[11] (*See* Doc. 33, pp. 14–21; Doc. 33-13; Doc. 36, p. 14; Doc. 36-1). So it meets the "low threshold" of step one. *See Owen*, 629 F.3d at 1273–74.

Step two looks to whether "the procedures were reasonably adapted to avoid the specific error at issue." *See id.* First, Defendant cannot satisfy this step by pointing to a procedure, namely the validation process under Section 1692g, that it is statutorily required to implement. (*See* Doc. 33, pp. 15 – 16, 20); *Owen*, 629 F.3d at 1275.

Second, Defendant's internal procedure, in Defendant's own words, "address[es] how NACS representatives are to handle accounts that are discovered to be work-related to avoid allegations of a violation of the FDCPA." (Doc. 33, p. 17; Doc. 33-13.) Because this is an "after-the-fact procedure," not designed to prevent the sending of collection letters for debt covered by workers' compensation, this procedure is insufficient to qualify for the bona fide error defense. (*See* Doc. 33-13); *Owen*, 629 F.3d at 1275; *Kottler*, 460 F.Supp.3d at 1287.

Third, while AdventHealth's Standard Operating Procedure is designed to avoid the mistaken collection of debt subject to workers' compensation coverage,

---

[11] Plaintiff provides excerpts from the deposition of Defendant's 30(b)(6) witness describing Defendant's automatic account-scrubbing procedure, however, the witness admits that this scrubbing procedure does not check if an account is covered by workers' compensation or if the debt is the result of work-related injuries. (*See* Doc. 37, pp. 10–13.) So the Court will not consider this procedure in its analysis.

11

Defendant cannot rely on its creditor's procedures to qualify for the bona fide error defense. (*See* Doc. 36-1); *Owen*, 629 F.3d at 1275–76.

Defendant fails to support its contention that it is more entitled to reliance on AdventHealth because of AdventHealth's role as the medical provider and workers' compensation claim administrator in this case, and, to the extent Defendant argues that the error was not discoverable or that no apparent procedures would have prevented the error, these arguments are speculative and unsupported by evidence. (*Cf.* Doc. 33.) Defendant has the burden of showing that it maintained procedures that were "reasonably adapted to avoid the specific error at issue," and Defendant has not pointed to any internal procedure designed to prevent collection of debt subject to workers' compensation. (*Cf. id.*); *see Edwards*, 584 F.3d at 1352; *Owen*, 629 F.3d at 1273–74. Defendant is not entitled to the bona fide error defense.

Considering the evidence in the light most favorable to Defendant, there is no genuine issue of material fact. The Defendant violated the FDCPA and does not qualify for the bona fide error defense, so Plaintiff's motion is due to be granted.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Plaintiff's motion (Doc. 34) is **GRANTED**.

2. Defendant's motion (Doc. 33) is **DENIED**.

      3.      The Plaintiff's claim will proceed on the issue of damages.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 16, 2024.

ROY B. DALTON, JR.
United States District Judge